UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NATCHANUN SUWANNAWONG | Case No. 22-11153-KHK |
| | Chapter 7 |
| Plaintiff, | Adversary Proceeding No. |
| v. | |
| ALEXANDRA SEMYONOVA-ELLIS | |
| Defendant. | |

COMPLAINT TO
DETERMINE DISCHARGEABILITY OF
DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)

Comes now Natchanun Suwannawong ("Suwannanwong") by counsel, and pursuant to 11 U.S.C. §§523(a)(2), 523(a)(4), 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, for her Complaint against Alexandra Semyonova-Ellis ("Semyonova-Ellis"), states as follows:

PARTIES

1. On August 31, 2022, (the "Petition Date"), Semyonova-Ellis filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia.

2. Suwannanwongis a natural persons and, as set forth below, is a creditor of Semyonova-Ellis.

3. At all times relevant hereto, Snap Car Buying, Inc. ("Snap")  was a licensed Motor Vehicle Dealership in the Commonwealth of Virginia.

4. At all times relevant hereto, Semyonova-Ellis was a licensed Motor Vehicle Dealer Operator, owning and operating Snap.

5. At all time relevant hereto, Semyonova-Ellis was an employee and agent of Snap.

6. Semyonova-Ellis personally undertook all of Snap's actions described below.

## Jurisdiction and Venue

7. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334

8. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §1409.

9. This adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2).

## Background Facts

10. On or about April 7, 2020, Plaintiff purchased a 2012 BMW 5 Series, VIN WBAFU9C5XCC787114 (the vehicle) from Snap. A copy of the Buyers Order is attached hereto as Exhibit 1.

11. Semyonova-Ellis, together with a sales person named Angel, was the salesperson from Snap who dealt with Suwannanwong in all aspects of the transaction.

12. Snap had purchased the vehicle from Manheim Auto Auction on or about March 13, 2020.

13. At the time Snap purchased the vehicle, the vehicle was titled in Pennsylvania.

14. The Pennsylvania title for the vehicle reflected that the registration would not be released or issued as taxed remained unpaid. A copy of the Pennsylvania title for the vehicle is attached hereto as Exhibit 2.

15. Snap acquired and accepted the title for the vehicle on or about March 13, 2020.

16. Semyonova-Elliswas aware of the terms for release/issuance of the Pennsylvania title.

17. At the time Snap sold the vehicle to Suwannanwong on April 7, 2020, Snap and Semyonova-Ellis knew that they could not deliver clear title or register the vehicle in Suwannanwong's name due to the Pennsylvania registration being held because of unpaid taxes.

18. At the time Snap sold the vehicle to Suwannanwong on April 7, 2020, Semyonova-Ellis had a copy of the Pennsylvania title in its possession.

19. As reflected on the Pennsylvania title, there were open re-assignment slots available for a re-assignment of title on the Title.

20. Since Snap and Semyonova-Ellis had the physical title, and there were open slots available for re-assignment on the title, Snap was required to provide title assignment and odometer disclosures to Suwannanwong on the face of the title.

21. Rather than re-assigning title to the vehicle on the Pennsylvania title, Snap, by and through Semyonova-Ellis, re-assigned the title to Suwannanwong on a Virginia form VAD20, Re-assignment of Title by Virginia Motor Vehicle Dealer. A copy of the VAD20 Reassignment is attached hereto as Exhibit 3.

22. Snap and Semyonova-Ellis used the VAD20 Reassignment form rather than the title to assign ownership was to conceal and hide from the Suwannanwong the fact that the Pennsylvania title had a hold on issuing registration because of unpaid taxes.

23. When Snap sold the vehicle to Suwannanwong, Snap and Semyonova-Ellis compounded the tax problem by not including any sales tax in the transaction or Buyer's Order.

24. Semyonova-Ellis told Suwannanwong that the total price on the Buyer's Order was the

total price she would owe for the purchase of the vehicle.

25. Snap paid the sales taxes in the amount of $1,132.84 for this transaction to the State on May 4, 2020. A copy of the receipt is attached as Exhibit 4.

26. After several months, Snap and Semyonova-Ellis had not registered the vehicle in Suwannanwong's name.

27. The temporary tags for the vehicle expired on the vehicle on May 7, 2020.

28. Suwannanwong repeatedly contacted Semyonova-Ellis demanding that Snap and Semyonova-Ellis register to her the vehicle for which she had paid.

29. On each and every occasion, Semyonova-Ellis would either ignore Suwannanwong's messages and demands, or would provide an excuse or delaying tactic.

30. Suwannanwong has been unable to drive the vehicle since that May 7, 2020.

31. In July, 2020, Suwannanwong demanded that Snap and Semyonova-Ellis cancel the transaction.

32. Semyonova-Ellis at that time told Suwannanwong that she needed to pay sales tax for her purchase of the vehicle. Defendants assured Suwannanwong that they would promptly register the vehicle in her name upon the payment of $1,132.84 in sale taxes.

33. Suwannanwong therefor paid Snap $1,132.84 for sales taxes. A copy of the receipt for payment is attached hereto as Exhibit 5.

34. Snap and Semyonova-Ellis never paid the outstanding taxes that were owed to Pennsylvania when it purchased the vehicle.

35. Snap and Semyonova-Ellis were thus unable to deliver clear title to the vehicle to Suwannanwong.

36. Semyonova-Ellis knew at every stage of the transaction that Snap could not issue clear

     title to the vehicle to Suwannanwong.

37. Snap and Semyonova-Ellis had no intention of delivering clear title to the vehicle to Suwannanwong.

38. Snap and Semyonova-Ellis have a pattern and practice of selling vehicles to consumers and not delivering clear title.

39. Semyonova-Ellis was aware of Snap's pattern and practice of selling vehicles to consumers and not delivering clear title, yet took no action to correct that pattern and practice.

40. Semyonova-Ellis instituted and perpetrated Snap's pattern and practice of selling vehicles to consumers and not delivering clear title.

41. Suwannanwong has suffered inconvenience, aggravation and other incidental and consequential damages.

42. As a further result of the above, the vehicle was not conforming to the representations and warranties of title.

43. The above-described acts constitute intentional misrepresentations by Semyonova-Ellis and Snap that the they had clear title to the vehicle.

44. Semyonova-Ellis knew that Snap did not have clear title to the vehicle.

45. Semyonova-Ellis had a duty to disclose this information to prospective purchasers.

46. Semyonova-Ellis intentionally failed to disclose the fact that they did not have clear title to the vehicle.

47. Semyonova-Ellis knew that the above referenced representations were false.

48. Semyonova-Ellis made the above-described misrepresentations, concealment and commissions of material facts with full knowledge of their falsity or with reckless

disregard of the truth.

49. Suwannanwong made the above-described misrepresentations, concealment and commissions of material facts with the intent to mislead Suwannanwong.

50. The above-described actions were committed by Semyonova-Ellis willfully, wantonly and with reckless disregard to their truth and to Suwannanwong's rights.

51. Semyonova-Ellis intended that Suwannanwong rely upon the above-described misrepresentations, concealment and omissions.

52. Suwannanwong did rely on the above-described representations, concealment and omissions of Semyonova-Ellis.

53. As a direct result of the above, Suwannanwong suffered damages.

54. Semyonova-Ellis' actions were in willful, wanton, malicious and reckless disregard of Suwannanwong's property rights.

55. Semyonova-Ellis is personally liable for the representations, acts and omissions of material fact made by Snap described above.

56. Suwannanwong filed a lawsuit against Semyonova-Ellis and Snap in the General District Court of Prince William County for the above actions.

57. The Court entered a judgment in favor of Suwannanwong and against Semyonova-Ellis and Snap, in the amount of $25,000, together with $14,576 in attorney fees, $86 court costs and interest at the rate of 6% per annum from April 7, 2020 until paid. The Court made a specific finding that " in the transaction underlying this case the Defendant made a fraudulent representation, violated Virginia Code §46.2-1542, violated the Virginia Consumer Protection Act, and that the Plaintiff's damages claimed herein are from this violation". A copy of the judgment order is attached hereto as Exhibit 6.

58. The Court's order is final and binding.

59. Suwannanwong's claims against Semyonova-Ellis are based on Semyonova-Ellis's false pretenses, false representations and/or actual fraud, and are thus a nondischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A).

60. Semyonova-Ellis is estopped from contesting that she committed fraud as a result of the Prince William County General District Court order. See <u>Courtney v Touma</u>, Case No 19-01123-BFK, United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, ECF # 91. A copy of this ruling is attached as Exhibit 7.

61. Semyonova-Ellis is entitled to a credit on the judgment for funds received from the dealer bond for Snap, in the amount of $20,000 and $1,500 paid directly by the debtor.

Wherefore, SuwannanwongNatchanun requests that this Court enter an order finding that her claims are not dischargeable and are not discharged in Semyonova-Ellis's bankruptcy, and for such other relief as the Court deems appropriate.

Respectfully submitted,
/s/   Thomas R. Breeden
Thomas R. Breeden, Esquire #33410
**THOMAS R. BREEDEN, PC**
10326 Lomond Drive
Manassas, VA 20109
(703) 361-9277
(703) 337-0441 (fax)
Email: trb@tbreedenlaw.com
Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 18th day of November, 2022, I served a copy of the Complaint to Determine Dischargeability of Debt, by first class mail, postage pre-paid or by CM/ECF to:

Brian Kenneth Madden
Brian Kenneth Madden, PC
PO Box 7663
Arlington, VA 22207
703-533-0101
888-433-6583 (fax)
email: briankmadden@gmail.com
Counsel for Alexandra Semyonova-Ellis

Janet M. Meiburger
The Meiburger Law Firm, P.C.
341 Dial: 866-652-2725 Code: 5661649
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
703-556-9404
703-556-8609 (fax)
email: trustee@meiburgerlaw.com
Bankruptcy Trustee

/s/   Thomas R. Breeden
Thomas R. Breeden